Charles D. Augustin, the plaintiff herein, doing business under the trade name of Olympia Roofing Company, filed suit against Sam Piancko, defendant, for the sum of $141.00, alleging that this amount was due him for repairing the roof of the premises located in 342-344 S. Rampart Street.
Defendant denied that he was indebted to the plaintiff in any sum whatsoever and reconvened claiming the sum of $485.00, averring that to place the said roof in the condition originally agreed upon by plaintiff would cost the aforementioned sum.
From a judgment dismissing both the principal and the reconventional demand, plaintiff appeals. Defendant answered the appeal praying for judgment in reconvention.
The record, although conflicting, reveals that during the "early part of 1946", defendant employed plaintiff to repair the roof of 342-344 S. Rampart Street, without any agreement as to the cost thereof. It appears that plaintiff had, on other occasions, done work for defendant without determining the cost in advance of the work. Upon the completion of the repairs to the roof plaintiff sent defendant a bill in the amount of $437.21. The record is vague as to the date of this first bill. However, the record does show an invoice dated September 30, 1946, sent by plaintiff to defendant. Thereafter, defendant or his employees complained to plaintiff that the roof continued to leak, and plaintiff, from time to time, in response to complaints, examined the roof. Plaintiff denied that the roof leaked. Defendant, on the other hand, maintained that it did. Finally, during the Month of December, 1946, plaintiff reexamined the roof and ascertained that there was a leak emanating from the adjoining property. There is a dispute between the parties as to whether there was to be an additional charge of $141.00 for repairing this leak. Plaintiff contends that he repaired some metal work and the parapet wall on the property adjacent to that owned by the defendant, and which he claims was causing the roof of defendant's property to leak. Defendant denies that *Page 859 
he had agreed to pay any additional charge for this work and that it was included in the original employment of plaintiff. In any event this work was completed between December 17th and 23d of 1946. On January 3, 1947, defendant paid plaintiff the sum of $437.21. On January 23, 1947, plaintiff sent defendant an invoice in the amount of $141.00, which is the object of this suit.
A careful analysis of the record reveals that defendant employed plaintiff to repair the roof of his property which was leaking, and that defendant was not concerned with the problem of where the leak or leaks emanated. Plaintiff was given, to express ourselves colloquially, "carte blanche" to repair the roof in question.
We are of the opinion that plaintiff failed to repair defendant's roof properly in the first instance and that the work performed in December was obviously intended to be included in the initial employment of plaintiff by defendant. We, therefore, believe that the trial court was correct in dismissing the main demand.
With respect to the reconventional demand, it is our opinion that the record contains no evidence to sustain this action. Defendant placed on the stand a roofing salesman and estimator, who testified in substance that he was requested by defendant to examine the roof, but in the final analysis, he did not know whether he was estimating the cost of a new roof, or the cost of repairing leaks allegedly overlooked by the plaintiff. The following testimony was elicited from this witness which conclusively establishes in our minds that the trial court was correct in dismissing the reconventional demand.
"Q. Tell us what you know about this matter? A. Well, Mr. Piancko called us up for an estimate and one day the superintendent and myself goes down to Mr. Piancko's business and I walked in the front door and asked Mr. Piancko where the roof was leaking. That is the general custom to see if we need a new roof or not. Mr. Piancko points to the ceiling like this (indicating) and there is no other answer to it. We go on top of the roof, and, of course, when we figure a new roof or figure repairing leaks or put a new roof you have to see the leaks, and I had an understanding that the roof was leaking all over, and —
* * * * * *
"By the Court: Don't say what your understanding was, just tell us what you did. A. Well, we went up and measured the roof for a new roof.
"Q. Well, did this roof need this work done or not? A. Well, I couldn't tell you offhand.
"Q. You mean you gave an estimate without knowing the work to be done? A. Well, the man called up for an estimate and if I could have seen the leaks I would have gave him an estimate on repairing them, but the thing was he wanted a new roof.
* * * * * *
"Q. Did Mr. Piancko say he wanted a new roof? A. He called for an estimate, whether for a new roof or repairs he didn't state.
* * * * * *
"Q. Did you make any examination of the roof at all? A. Not a thorough examination.
"Q. Did you know whether there were any leaks at all in the roof? A. No, sir."
This is manifestly a case which involves the well known doctrine that the findings of a trial court will not be disturbed or reversed where only questions of fact are involved, unless that finding is obviously erroneous, consequently, and
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED. *Page 860